## JOHN MITCHELL *versus* JOHN TIBBETTS *et al.*

A declaration in an action of *qui tam*, embracing in one count a claim for several penalties on account of distinct violations of a statute, may be amended by filing counts for each violation.

By St. 1800, *c.* 26, giving the consent of this Commonwealth to the purchase by the United States of a tract of land in Charlestown for a navy yard, it was provided that the Commonwealth should retain concurrent jurisdiction over it, so far as that all civil and such criminal processes as might issue under the authority of this Commonwealth against persons charged with crimes committed without that tract of land, might be executed therein. It was *held*, that under the *St.* 1822, *c.* 103, requiring vessels employed in transporting stone within this Commonwealth to be weighed and marked, no penalty was incurred by the employment of a vessel not weighed or marked, in transporting stone from the State of Maine to such navy yard ; because such vessel was not employed in transporting stone *within this Commonwealth*, in the sense of the statute, and because no offence was committed within the jurisdiction of the Commonwealth.

THIS was a *qui tam* action under the *St.* 1822, *c.* 103 respecting sloops and vessels employed in transporting stone, sand and gravel, within this Commonwealth. The writ contained one count only. In this count the plaintiff claimed to recover four distinct penalties for four several violations of the statute. At a former term of this Court, the plaintiff moved to amend the declaration by filing a count for each violation of the statute , but his right so to amend was denied by the defendants.

If the plaintiff should be permitted to amend the writ, then the case was to be submitted to the decision of the Court upon an agreed statement of facts.

The vessel, in relation to which the penalties were alleged to have been incurred, was owned by the defendants. The defendant, Tibbetts, who was the master of the vessel, was a citizen of Maine ; the other defendant, at the date of the writ,

was a citizen of Charlestown in this Commonwealth. The vessel was built and enrolled in Maine, and took out a coasting license there in due form, according to the laws of the United States. In May, 1834, one Pritchard contracted with the master of the vessel for her employment in the coasting business for the ensuing season ; the master agreeing to man, find and navigate her, at the expense of the owners. The vessel was principally employed in carrying split stone from Blue Hill, in Maine, to the navy yard in Charlestown, for the use of the United States, under a contract with the government ; and was not otherwise employed in transporting stone, sand or gravel within this Commonwealth. The stones were of large dimensions and were paid for by the cubic yard, and not by weight.

The vessel was not weighed or marked, as is required by the statute, although the defendants were admonished of the existence of such statute by a weigher of vessels duly appointed by the city of Boston.

If the Court should be of opinion, that the plaintiff was entitled to recover, he was to have judgment for such sum as the Court should order ; otherwise judgment was to be rendered for the defendants.

*Choate* and *Crowninshield*, for the plaintiff, upon the question of amendment, cited *Burnham* v. *Webster*, 5 Mass. R. 266.

*Buttrick*, for the defendants, upon the same question, cited *Haskell* v. *Moody*, 9 Pick. 162 ; Steph. on Pl. 293, 294 ; *Cross* v. *Kaye*, 6 T. R. 543 ; and to the point, that the action could not be maintained because the vessel was never employed in transporting stone in this Commonwealth, within the meaning of the statute, but from one foreign jurisdiction to another, and because no offence was committed within the jurisdiction of this Commonwealth, *Commonwealth* v *Clary*, 8 Mass. R. 72 ; 3 Story's Comm. on the Constit. 112, *et seq.* ; 1 Kent's Comm. 402, 403, 404 ; *United States* v. *Cornell*, 2 Mason, 60 ; *People* v. *Godfrey*, 17 Johns. R. 225 ; *Commonwealth* v. *Young*, 1 Hall's Journal of Jurisprudence, 47.

SHAW C. J. delivered the opinion of the Court. On the subject of amendment, we think the plaintiff was entitled to

Mitchell
*v.*
Tibbetts.

*Jan.* 21*s,*
1836.

*April term*
1836.

amend. There is no distinction in this respect, between *qui tam* actions and others, as to the power and authority of the Court ; there may undoubtedly be circumstances existing in penal actions, which would induce the Court not to permit an amendment, where it would tend to work injustice. In the present case, the original declaration embraced a claim for several penalties in one count ; this is an irregular mode of declaring. But defective as it is, it states intelligibly the cause of action, and gives the defendant notice of the claim, for which the plaintiff intends to proceed. An amendment therefore stating these several claims correctly, in several and distinct counts, introduces no new cause of action, but puts into correct and legal form, the claims already made.

Were it necessary to give an opinion upon all the questions, which have been raised and discussed in this cause, and espe cially upon the question, whether the statute upon which this action is brought, requiring all sloops and vessels, employed in carrying stone, gravel and sand in this Commonwealth, to be weighed and marked, and certain fees to be paid therefor, is in conflict with the constitution of the United States, which gives to Congress the exclusive power of regulating commerce among the States, and the power of fixing the standard of weights and measures, or with that part of the constitution which forbids the States to lay any duty or impost, or whether the statute merely establishes a constitutional and salutary regulation, we should probably require more time and leisure to consider questions so weighty in themselves, and involving principles and consequences of so much importance. But as there is one plain ground upon which the Court are all of opinion that the action must fail, we consider it proper to state it, and dispose of the action.

The statute imposing this penalty, *St.* 1822, *c.* 103, § 1, applies to every sloop or vessel, employed in transporting stone, sand or gravel within this Commonwealth. It has been contended by the defendants, that by the fair construction of this statute, it must be intended, vessels transporting stone, &c. from one place to another, both of which are within the limits of jurisdiction of this Commonwealth, and that this construction is necessary, to prevent it from being obnoxious to

the objection of violating the constitution of the United <span>Mitchell<br>*v.*<br>Tibbetts.</span>
States ; making it, in its application, a mere police regulation.
Without determining this point of construction, the Court are
all of opinion, that to bring a vessel within this description,
she must be employed in landing stone at, or taking stone from,
some place in this Commonwealth ; that one *terminus* at least,
of the employments, must be a place within the limits and ju-
risdiction of the State ; and that a vessel is not the subject of
the act, and liable to the penalty, in consequence of merely
passing through a portion of the navigable waters of the State.

If the navy yard at Charlestown is not to be considered
within the jurisdiction of the Commonwealth for the purposes
of this act, the principle above stated settles the question, be-
cause the case finds, that the employment of the vessel, dur-
ing the period within which the penalty is supposed to be in-
curred, was that of transporting stone from the town of Blue
Hill in Maine, to the navy yard in Charlestown, passing
through the waters of Massachusetts Bay and Boston harbour.

By *St.* 1800, *c.* 26, jurisdiction was ceded to the United
States of a tract of land in Charlestown for a navy yard.
The consent of the State was granted upon the express condi
tion that this Commonwealth should retain a concurrent juris-
diction with the United States, in and over the land, so far
that all civil and such criminal processes as might issue under
the authority of the Commonwealth against any person charg-
ed with crimes committed without this tract of land, might be
executed therein in the same manner as if such consent had
not been given.   Here no concurrent jurisdiction was reserv-
ed, to proceed against offences committed within the territory,
but only to give effect to such civil and criminal processes,
that the place might not be made a refuge and sanctuary for
debtors and criminals.   We are not now for the first time
called upon to put a judicial construction upon such an act.
By *St.* 1798, *c.* 13, § 2, a similar cession was made to the
United States, of an island in the harbour of Boston, and of a
tract of land in Springfield, and a concurrent jurisdiction for
the civil and criminal processes of the Commonwealth was
reserved in the same terms as those used in the clause above
cited, in the act ceding jurisdiction of the navy yard in

Charlestown.   Afterwards a case came before the Court, involving the question, whether the municipal laws and police regulations of the Commonwealth were in force within the territory in Springfield, the jurisdiction of which was ceded to the United States in the terms and with the qualifications above stated, and whether the courts of the Commonwealth had jurisdiction to punish offences against the laws of the State alleged to have been committed within such territory ; and it was decided in the negative.   *Commonwealth* v.  *Clary*, 8 Mass. R. 72.   That was a prosecution against the defendant for selling spirituous liquors, within such territory, without license, contrary to a statute law of the State, a provision of law strictly in the nature of a municipal and police regulation. But the Court decided upon the broad ground, that such law had no operation within the territory thus ceded, and that it was within the legislative jurisdiction of the United States, to make such laws for the regulation of the persons within such territory, as they should judge expedient.

 · The provisions of the statute ceding jurisdiction of the navy yard in Charlestown to the United States, being in the same terms, and with the like qualifications, we are of opinion, that the law of Massachusetts on which this action is founded, did not extend to, and operate within that territory, and that consequently this vessel was not employed within this Commonwealth within the meaning and construction of the act.

If we are right, in the first construction of the act, that employment within the Commonwealth, must be landing stone, sand or gravel, at some place, or taking them from some place, within the Commonwealth, then the supposed violation of the 'aw in the case before us would consist in landing stone at the navy yard, in a vessel not measured conformably to the statute.   The whole offence which incurs the penalty would be done within that territory.   Is it possible to make any distinction between that and selling liquor within the same territory, contrary to the statute ?

On both grounds therefore, as well because the vessel was not in a legal and proper sense employed in transporting stone within this Commonwealth, as because no offence was committed within the territory or under the jurisdiction of the Com-

monwealth, the Court are of opinion, that the defendants have not incurred the penalties sued for in this action, and that the action is not maintained.